Curia, per
Nott, J.
I concur with the chancellor in this case, and I should have regretted to have found any rule of law or practice which would have required us to come to any other conclusion. If the revocation of letters of administration, at the moment when the complainant has nearly arrived at the consummation of a long and laborious investigation, is to turn him round to commence another action against another person for the same cause, and delay him until such other person has traveled through a similar investigation, it would open a field of fraud and litigation the extent of which cannot be foreseen. And although it is said that no fraud was intended in this case, and I am not disposed to impute any, yet we.cannot shut our eyes against the consequences of such a precedent. It is contended that the revocation of the letters of administration was the judicial death of the administrator, and that the suit therefore abated, as if he were actually dead. But there is an essential difference between a natural death and this judicial death. In the first case there is no party against whom an account can be taken. In the latter the person remains, — the character only is changed, but the liability continues. It is not pretended indeed that the defendant is not still liable, but that he can be required to account to his successor only *606 *and not to the complainants. It is not pretended that justice may not as well be done this way, but that the practice of the court requires the useless formalities to be observed of going the round of two successive actions to bring the parties back to the very spot where they now are. The current, however, of analogous cases would lead us to conclude, that the practice of the court does not require any such circuity of action. In all cases of attorneys, factors and agents of every description, a bill for an account may be maintained, although the character in which they acted may have terminated. A woman, acting in the character of executrix or administra-trix, does not abate a suit by marrying, although her identity is much more nearly destroyed, by being merged in that of her husband on whom the liability devolves, than in the present case. But by making the husband a party, the complainant may go on to require an account in the same manner as if no such event had occurred. The administrator fie bonis non is now made a party; so that all the parties on whom the responsibility must ultimately devolve are before the court. No good reason, therefore, can be urged, why the decree should not be supported, unless some technical rule be interposed, which has not presented itself to my mind.
Two objections are relied on which are thought to oppose insurmountable obstacles to the further progress of the complainant against the first administrator. The first is, that it would require the court to render a decree between the two defendants, which it is contended cannot be done; and the second, that there is no such privity between the complainant and the first administrator since his character of administrator is gone, as will authorize them to proceed against him. With regard to the first, the experience of every day teaches us that the equity jurisdiction could hardly exist without the exercise of such a power. In most of the cases between creditors, legatees and executors’ between principal* and sureties, partners, and cases involving the interests of executors and administrators, when there have been successive executorships, an adjustment of the claims of the respective parties, and between the different defendants is necessary. On this subject, however, we are not without direct and very high authority. In the case of Chamley v. Lord Dunsany and others, 2 Sch. & Lefr. 690, before the house of lords, which was an appeal from a decree of Lords Redesdale, one of the grounds of appeal was, that a decree between co-defendants was not warranted by the practice of the court. Lord Redesdale in speaking to that point says, it seems strange to object to a decree because it is between co-defendants, when it is grounded on evidence between plaintiffs and defendants. It is a jurisdiction long settled and acted on, and the constant practice of the court of equity; so much so that it is qjrite unnecessary to state any case in its support. Lord Eldon, in speaking on the same subject, says, where a case is made out between defendants by evidence arising from the pleadings and proofs between plaintiffs and defendants, a court of equity is entitled to make a decree between the defendants. Further, says this learned chancellor, a court of equity is bound to do so. The defendant chargeable has a right to insist, that he shall not be liable to be made a defendant in another suit for the same matter that may then be decided between *607 him and his co-defendant. And the co-defandant may insist that he shall not be obliged to institute another suit for a matter that may then be adjusted between the defendants. And if a court of equity refused so to decree, it would be a good ground of appeal by either defendant. And Lord Erskine, who was then on the woolsack, said, he concurred with these two noble lords in every position they had laid down. This case is valuable, not only as deciding that question, but as laying down the principles upon which *the practice is founded, and pointing out the description of cases to which it applies. And in the case now before us, that course is recommended by all the considerations upon which such a proceeding is authorized. The decree between the defendants is to be made out by pleadings and proof between the plaintiff and defendants. It will relieve one defendant from liability to another action. It relieves the other defendant from the expense/trouble, and delay, of bringing another suit, and it affords the complainant ail the means of obtaining justice, without commencing his suit de novo.
It only remains to be determined, whether by the revocation of the letters of administration the privity between the complainant and the first administrator is so destroyed as to abate the suit ? And it would appear to me, from the principles already laid down, that no such change in their relations has taken place as must necessarily lead to such a result. The appellant will be ultimately liable to this complainant in another form, and justice cannot be so encumbered with the “net work of form” as to require such a circuity of action to effect the object. But, on this point also, we have an authority, without looking beyond the volume already before me, which fully maintains the position' which I am endeavoring to maintain. In the case of Doyle v. Blake, 2 Sch. & Lefr. 229, the circumstances were as follows : Dominick Fields made his will, by which he appointed Blake and Athy his executors. His widow entered a caveat in the prerogative court to prevent probate of the will from being granted. The two executors, Blake and Athy, were appointed administrators pendente lite. The widow afterwards withdrew her suit. The two executors then renounced their executorship, and administration cum testamento an-nexo was granted to Martin Horace. A bill was afterwards filed by the legatees against the two executors and the administrator *Horace, for an account. The complainants alleged that the executors had taken upon themselves the execution of the will by becoming adrninistrators/ieitdente lite, and that they could not afterwards renounce, and that Horace could only be considered as their agent and not as a lawful administrator. Lord Redesdale was of that opinion, and declared, that under all the circumstances of the case, the defendants, Blake and Athy, had so far accepted the will of the testator as executors therein named, and had so far acted in the execution thereof, that they ought to be deemed to have taken on themselves the burthen of the execution of such will, and were not at liberty to renounce the probate thereof. And that Horace ought to be considered as having acted in the affairs of the estate as the agent of the defendants, Blake and Athy. The master, however, was directed to inquire and report in what manner such part of the estate and effects of said Fields as should appear to have come to the hands of Horace were *608 applied, and whether the same was properly managed, and whether the produce thereof was properly applied by him in due course of administration, and according to the directions made in the will. It was also directed that an account of the estate of Horace should be taken, and that the same should be applied in the first instance to the payment of any balance which might appear against him; and if insufficient to pay the whole, that Blake and Athy should be answerable for that deficiency. In this case, although the administration was void, and the administrator considered merely as agent of the executors, and therefore as we might suppose accountable only to them, the Lord Chancellor held his representatives accountable for his administration, and subjected his estate first to the payment of the demands of the complainants, and held the executors liable for the balance only whi°b might be due after *his estate was exhausten. It was, therefore, a much stronger case than the one now under consideration. For in this case the administrator was duly appointed, and acted under a lawful authority. He is still liable in the character of administrator, and not as agent, and the mere form of proceeding is the only matter in contest; and as all the matters between the respective parties may as well be adjusted by making the second administrator a party to this bill, as by filing another against him and bribing him to an action against his predecessor, I think we are authorized upon principle, as well as by precedent, to adopt that course. The decree of the chancellor must therefore be affirmed.

Decree affirmed.